| | |
|---|---|
| 1 | DAVID F. MCDOWELL (CA SBN 125806) |
| 2 | DMcDowell@mofo.com<br>MORRISON & FOERSTER LLP |
| 3 | 707 Wilshire Boulevard<br>Los Angeles, California  90017-3543 |
| 4 | Telephone:   213.892.5200<br>Facsimile:    213.892.5454 |
| 5 | Attorneys for Defendant |
| 6 | FITBIT, INC. |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON WILLIS, individually and on behalf of all those similarly situated,<br><br>         Plaintiff,<br><br>   v.<br><br>FITBIT, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>         Defendant. | Case No.  3:19-CV-01377 DMS WVG<br><br>**DEFENDANT FITBIT, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION**<br><br>Hearing Date:   October 25, 2019<br>Time:              1:30 p.m.<br>Courtroom:      13A<br><br>Honorable Dana M. Sabraw |

## I.    INTRODUCTION

It is striking that at no point in his "Opposition to Motion by Defendant Fitbit, Inc. to Compel Arbitration and to Dismiss or Stay the Action" ("Opposition") does Plaintiff actually oppose the fact that he entered an arbitration agreement with Fitbit.  Indeed, Plaintiff does not deny that, *all five times* that he registered Fitbit devices, he faced a screen stating **"I agree to the Fitbit Terms of Service and Privacy Policy"**—with the hyperlinked phrases "Terms of Service" ("TOS") and "Privacy Policy" called out in bold and/or different-colored type.  He does not deny that, *all five times*, he checked a box that said, "**I Agree**."  And he does not deny that, under a heading written in large, blue font titled, "Dispute Resolution," *all five* of the terms of service agreements to which he agreed (the "ToS Agreements") state:

> You agree that any dispute between you and Fitbit arising out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or services (collectively, "Disputes") will be governed by the arbitration procedure outlined below.

and that "[d]isputes must be arbitrated on an individual basis."  (MPA in support of Motion to Compel Arbitration ("Mot.") at 5.)

Moreover, Plaintiff does not deny that he never took advantage of the multiple opportunities afforded to him under the arbitration procedure outlined in the ToS Agreements—not his 30-day window to "[o]pt-out" of his agreement to arbitrate, nor his options to seek informal resolution by contacting Fitbit directly, or to pursue qualifying claims in small claims court, or to have Fitbit pay all arbitration fees for claims less than $75,000.

Critically, Plaintiff also does not deny that *all five* of the arbitration agreements also contain a "delegation clause":

> Arbitration Procedures: The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes.

Nor does he deny that the AAA rules, which are readily available online, grant the arbitrator the power to rule on arbitrability of a dispute.

Instead, Plaintiff's entire Opposition rests on the notion of unconscionability. His sole argument is that all five of the ToS Agreements are both procedurally and substantively unconscionable. As explained in the opening brief, this argument is for the arbitrator, not the court, to consider. Even if this court were to consider it, the challenge fails.

For all the foregoing reasons, Fitbit respectfully requests that the Court grant its motion and direct the parties to arbitration, consistent with their written agreements.

## II. ARGUMENT

Plaintiff's Opposition rests solely on the idea that the applicable ToS Agreements are unconscionable. Where a delegation clause exists, as it does here, "it is the arbitrator who will consider the conscionability of the agreement and the scope of the arbitration clause." *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 897 (2017); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015) (upholding dismissal of an action in favor of arbitration where, because the plaintiff failed to "'make any arguments specific to the delegation provision' . . . and instead argued 'that the [Arbitration Clause] *as a whole* is unconscionable under state law,' . . . 'we need not consider that claim,' . . . because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question[.]" (alterations in original) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 73-75 (2010))). Thus the argument in Plaintiff's Opposition is for the arbitrator to consider, as are the claims in Plaintiff's complaint and the arbitrability of those claims.

Even if the Court, rather than the arbitrator, were to decide the conscionability of the ToS Agreements, Plaintiff has no basis for avoiding his agreement to arbitrate. Indeed, the only other court to consider Fitbit's arbitration

agreement enforced the delegation provision and referred the parties to individual arbitration before the American Arbitration Association ("AAA").  (*See* Decl. of David F. McDowell, Exs. 1, 2 [*McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD (N.D. Cal.), ECF Nos. 114 (Order Re Arbitration and Stay or Dismissal) & 126 (Order Re Motion for Reconsideration of Arbitration Ruling)].)

"[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).  Unconscionability consists of procedural and substantive elements, both of which must be present for a court to refuse to enforce an agreement. *Magno v. The College Network, Inc.* 1 Cal. App. 5th 277, 284 (2016).  Neither element is present here; thus Plaintiff fails to meet his burden, and both the arbitrability of Plaintiff's claims and the claims themselves must be arbitrated.

### A.   The ToS Agreements Are Not Procedurally Unconscionable

In light of the clarity of the arbitration agreement and the fairness of its terms, plaintiff cannot meet the two factors that must be shown for procedural unconscionability: oppression and surprise. *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 243-44 (2014).  As the courts have made clear, both must be shown in order to invalidate the contract term. *See id.*  As demonstrated below, these factors cannot be shown here.

The first factor, oppression, "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 245.  To claim oppression in this case, Plaintiff relies on *Baxter v. Genworth North America Corp.*, 16 Cal. App. 5th 713, 722 (2017).  But the facts here are a far cry from *Baxter*, where the plaintiff was required to sign an arbitration agreement in order to remain employed by her employer of over five years.  There, the court found a "high degree of oppressiveness" in light of the "take-it or leave-it" nature of the arbitration agreement, which left plaintiff without a "meaningful choice",

"opportunity to negotiate," or "equal bargaining power." *Baxter*, 16 Cal. App. 5th at 723.

Here, in contrast, Fitbit users have multiple opportunities to review the Terms of Service, including the arbitration agreement, both before and after purchasing a device, and they can "opt-out" of the arbitration agreement within 30 days of accepting it. (*See* Mot. at 17-18; *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (applying California law and determining that an arbitration agreement was not procedurally unconscionable in large part because it contained an opt-out provision allowing the plaintiff to reject the arbitration program within 30 days of signing the contract). Plaintiff had the opportunity to opt out of the arbitration agreement. He did not take it.

Plaintiff fails to address the second factor of procedural unconscionability—surprise—altogether. We presume this is because there is nothing to be said. Each of the five arbitration agreements applicable to Plaintiff appears prominently in clear, legible font within the ToS Agreements that Plaintiff agreed to, under a heading written in large, blue font titled, "Dispute Resolution." Furthermore, the AAA rules referenced within the delegation clause in the arbitration agreements are readily available online. *See, e.g.*, *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 691 (2014) ("[T]he failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties . . . on the Internet."); *see also Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (plaintiff could not "identify any feature of the AAA rules that prevent fair and full arbitration" and so "the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability").

Plaintiff's failure to show oppression or surprise bars his claim for procedural unconscionability, which in turn bars his claim for unconscionability.

### B. The ToS Agreements Are Not Substantively Unconscionable

Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party. *See Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88 (2003) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113-14 (2000)). To be substantively unconscionable, the provision must be so unreasonable and one-sided as to "shock the conscience." *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1394 (1996) (reversing lower court's finding that terms were unconscionable because agreement contained "no unclear or hidden terms . . . and no unusual terms that would shock the conscience . . . .").

The ToS Agreements here are reasonable in every respect; they are in no way "overly harsh" or a "shock" to the conscience.

#### 1. Limitation on Damages

Citing *Armendariz v. Foundation Health Psychcare Services, Inc.* 24 Cal.4th 83, 118 (2000), Plaintiff argues that "[p]rovisions that restrict or limit damages or remedies to the benefit of the stronger are evidence of substantive unconscionability." (Opp. at 21.) But *Armendariz* says the opposite: "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope." *Armendariz*, 24 Cal. 4th at 118. The doctrine of unconscionability merely "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party *without accepting that forum for itself*." *Id.* (emphasis added). Here, the Agreement is bilateral, so unconscionability does not limit the parties' freedom to contract for asymmetrical remedies.

Furthermore, Plaintiff misrepresents the extent of the ToS Agreements' limitation of liability, incorrectly asserting that "Fitbit's arbitration agreement . . . limits the amount of money that plaintiffs can recover to $100," which is less than the price of "almost every Fitbit device." (Opp. at 15.) In reality, every ToS

Agreement (not, as Plaintiff says, the arbitration agreements themselves) since October 6, 2015, has limited Fitbit's liability to the "THE AMOUNTS YOU HAVE PAID TO FITBIT FOR USE OF THE FITBIT SERVICE OR ONE HUNDRED DOLLARS ($100), IF YOU HAVE NOT HAD ANY PAYMENT OBLIGATIONS TO FITBIT, AS APPLICABLE." (Decl. of Jeff Bonham ("Bonham Decl.") Ex. D at 34, Ex. E at 53, Ex. F at 68, Ex. G at 81-82; Opp. Ex. 10 at 8-9, Ex. 11 at 9 & Ex. 12 at 9.) And the ToS Agreement effective October 27, 2014 applies the $100 only to liability "ARISING FROM OR RELATING TO THE WEBSITE." (Opp. Ex. 9 at 7.) Furthermore, each ToS Agreement has expressly noted that "SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SO [THIS] LIMITATION MAY NOT APPLY TO YOU" (or, in the case of the October 27, 2014 agreement, "[i]n some locations applicable law may not allow certain of the limitations . . . in which case such limitations may not apply to you"). (Bonham Decl. Ex. D at 34, Ex. E at 53, Ex. F at 68, Ex. G at 81-82; Opp. Ex. 9 at 7.)

Importantly, the ToS Agreements here place no limit on Plaintiff's recovery; if successful in his claims, Plaintiff has the ability to recover the money he paid for his Fitbit devices. Thus he can, indeed, be made whole. *Cf. Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003).

### 2.   Statute of Limitations

Plaintiff cites *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004), for the proposition that "[p]rovisions in arbitration agreements that limit applicable statute of limitations are indicators of substantive unconscionability." (Opp. at 17.) But it *Nyulassy*, the statute of limitations in the relevant arbitration clause is 180 days—far shorter than the one-year limitation here.

### 3. Venue

The ToS Agreements include provisions to ensure that any arbitration is conducted in a convenient location: Fitbit expressly agrees to arbitrate "in the United States county where you live or work, San Francisco, California, or any other location we agree to." (Bonham Decl. Ex. D at 35, Ex. E at 54, Ex. F at 69, Ex. G at 82; Opp. Ex. 9 at 8, Ex. 10 at 9, Ex. 11 at 10, Ex. 12 at 10.) These provisions in no way "shield" FitBit from liability. (*See* Opp. at 19.)

### 4. Small Claims Court

Plaintiff's speculation that Fitbit "would love to see all complaints end up in small claims court" has no basis, and it is unclear how Fitbit's inclusion of small claims court as an option for its consumers in its ToS Agreements could make those agreements unconscionable. (Opp. at 20.) The jurisdictional limit for small claims court is well above the restitution Plaintiff seeks, making it a perfectly reasonable option. Moreover, small claims court is but one of several options available to Plaintiff under the ToS Agreements. Plaintiff had a 30-day window to opt out of his agreement to arbitrate, and he could also seek informal resolution by contacting Fitbit directly, or have Fitbit pay all arbitration fees for claims less than $75,000. (Bonham Decl. Ex. D at 35, Ex. E at 54, Ex. F at 69, Ex. G at 82; Opp. Ex. 9 at 8, Ex. 10 at 9, Ex. 11 at 10, Ex. 12 at 10.)

### 5. Lack of Injunctive Relief

With the exception of *Armendariz*, which is particular to the employment context (see discussion above at II.B.1.), Plaintiff provides no legal basis for his argument that an arbitration agreement's lack of provision for injunctive relief contributes to unconscionability—nor can he. Moreover, the ToS Agreements here do not eliminate the possibility of injunctive relief. Indeed, as the court put it in *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD (N.D. Cal.), ECF No. 114 (Order Re Arbitration and Stay or Dismissal at 6), in discussing Fitbit's arbitration agreement:

> The arbitration agreement also has carve-outs. The parties may bring lawsuits for injunctive relief "to stop unauthorized use or abuse of the Fitbit products or Fitbit Service, or infringement of intellectual property rights" without having to arbitrate. . . . And the ToS acknowledges that some disputes may lie outside the scope of the agreement to arbitrate. "In the event that the agreement to arbitrate is found not to apply to you or your claim," the ToS provides, "you and Fitbit agree that any judicial proceeding (other than small claims actions) will be brought in the federal or state courts of San Francisco County, California."

### III. CONCLUSION

The Court should order Plaintiff to arbitrate all of his claims against Fitbit and dismiss or stay Plaintiff's claims pending the outcome of arbitration.

Dated:      October 18, 2019          DAVID F. MCDOWELL
                                      MORRISON & FOERSTER LLP

                                      By:   /s/ David F. McDowell
                                            DAVID F. MCDOWELL

                                      Attorneys for Defendant
                                      Fitbit, Inc.
                                      DMcDowell@mofo.com