UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON WILLIS,<br><br>        Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>        Defendant. | Case No.: 19-cv-01377-DMS (WVG)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY THE ACTION** |

  Pending before the Court is Defendant Fitbit, Inc.'s motion to compel arbitration and to dismiss or stay the action. Plaintiff Baron Willis filed an opposition to Defendant's motion, and Defendant filed a reply. For the following reasons, the Court grants Defendant's motion and stays further proceedings pending arbitration.

**I.**

**BACKGROUND**

  In May of 2015, Plaintiff purchased his first Fitbit device, a Fitbit Flex. (Compl. ¶ 23). Plaintiff alleges he wore his Fitbit Flex for its intended purpose and in a manner consistent with its intended use, yet "the band separated from the device, resulting in it falling off his wrist, multiple times." (*Id.*). Plaintiff returned his Fitbit Flex later that month and replaced it with a Fitbit Charge. (*Id.*). Plaintiff alleges he experienced the same issue with the Charge as he did with the Flex—specifically, the wristband separated from the

1

device and the device fell off his wrist. (*Id.* at ¶ 24). One year later, Plaintiff returned his Fitbit Charge and replaced it with a Fitbit Charge HR. (*Id.*). Plaintiff alleges he again experienced the same issue. (*Id.*). A few months later, Plaintiff replaced his Fitbit Charge HR with a Fitbit Blaze. (*Id.* at ¶ 25). Plaintiff alleges the Fitbit Blaze also fell off his wrist. (*Id.* at ¶ 26). Finally, one year later, Plaintiff returned his Fitbit Blaze and replaced it with an upgraded edition of the Blaze. (*Id.*). Plaintiff alleges this device also fell off his wrist and was eventually lost. (*Id.* at ¶ 27). Plaintiff alleges he "purchased and replaced his Fitbit devices because of representations Defendant made about the devices being wearable and capable of tracking, monitoring, and storing his personal data." (*Id.* at ¶ 28). According to Plaintiff, however, the devices were not wearable and because of "the 'popping-off' problem[,]" the devices were unable to track Plaintiff's steps, calories burned, or heartrate. (*Id.* at ¶ 29).

Upon purchasing his first Fitbit device, Plaintiff created an account with Fitbit and registered his device. (Mot. to Compel Arbitration at 10). This sign-up process required Plaintiff to affirmatively accept Fitbit's Terms of Service agreement. (*Id.*). Fitbit's Terms of Service includes an arbitration agreement, which requires that "any dispute arising out of the Terms of Service or the use of Fitbit's devices or services must be resolved by binding arbitration." (*Id.* at 12). The arbitration agreement further provides: "The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes." (*Id.* at 12–13). The Commercial Arbitration Rules require the arbitrator to decide threshold questions, including arbitrability. (*Id.* at 13). Specifically, Commercial Rule R-7(a) and (b) state:

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. Plaintiff registered, or "paired," each of his five Fitbit devices and agreed to Fitbit's Terms of Service each time.
(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause

2

> shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(*Id.* at 13). Plaintiff registered, or "paired," each of his five Fitbit devices and agreed to Fitbit's Terms of Service, including the arbitration agreement, all five times. (*Id.* at 13).

Based on these alleged facts, Plaintiff brought suit on behalf of himself and others similarly situated against Defendant. Plaintiff asserts six causes of action: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) breach of express warranty; (5) breach of implied warranty; and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* Defendant now moves to enforce the arbitration agreement in the Terms of Service, which Plaintiff opposes.

## II.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration has been signed.' " *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.' " *Concat LP v. Unilever, PLC*, 350 F. Supp. 796, 804 (N.D. Cal. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). In determining whether to compel arbitration, a court must determine two "gateway" issues: " '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' " *Kilgore*, 673 F.3d at 955–56 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If both requirements are satisfied, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* The burden of proving that the claims at issue are not suitable for arbitration is on the party resisting arbitration. *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.

## DISCUSSION

Plaintiff argues the arbitration agreement is unenforceable because it is both substantively and procedurally unconscionable. Plaintiff further argues this Court must determine the issue of enforceability. Defendant contends the threshold questions of arbitrability—including whether the arbitration agreement is unconscionable—must be decided by an arbitrator, not the Court, because the arbitration agreement delegates these gateway issues to an arbitrator.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. at 63, 68–69 (2010). These gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such [c]lear and unmistakable evidence of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (citations

4

and internal quotation marks omitted). For arbitration agreements under the FAA, "the court is to make the arbitrability determination by applying the federal substantive law of arbitrability absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law."[1] *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (internal citations and quotation marks omitted).

The Ninth Circuit has held "language 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.' " *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot*, 652 F.3d at 988). Here, the language of the arbitration agreement, which is applicable to all five Fitbit purchases, evidences the parties' clear and unmistakable intent to delegate the threshold questions of arbitrability to an arbitrator. As provided above, the AAA rules state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Mot. to Compel Arbitration at 13). Based on the language of the delegation provision, the Court finds the parties agreed to arbitrate the gateway issues, including whether the arbitration agreement is procedurally and substantively unconscionable. *See Brennan*, 796 F.3d at 1130 (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (extending *Brennan*'s holding to consumer contracts).

Because the parties clearly and unmistakably delegated the questions of arbitrability to an arbitrator, "the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796

---

[1] Federal law governs the arbitration question because the arbitration provision is covered by the FAA and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies. *See Brennan*, 796 F.3d at 1129.

1  F.3d at 1132 (citation omitted). When considering an unconscionability challenge to a
2  delegation provision, the Court must only consider arguments "specific to the delegation
3  provision." *Rent–A–Ctr.*, 561 U.S. at 73. In other words, the nonmovant must "argue that
4  the agreement to delegate to an arbitrator his unconscionability claim was *itself*
5  unconscionable" for the Court to address the unconscionability challenge. *Brennan*, 796
6  F.3d at 1133 (citing *Rent–A–Ctr.*, 561 U.S. at 74). Unless the nonmovant "challenge[s] the
7  delegation provision specifically, [courts] must treat it as valid under § 2 [of the FAA], and
8  must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the
9  [Arbitration] Agreement as a whole for the arbitrator." *Rent–A–Ctr.*, 561 U.S. at 72.

Here, Plaintiff challenges the validity of the entire arbitration agreement, not the specific delegation provision. Plaintiff argues the Terms of Service agreement is unenforceable because it is procedurally and substantively unconscionable for the following reasons: (1) the parties have unequal bargaining power, (2) the agreement is a "take-it or leave-it" contract, (3) the opt-out provision is unreasonable, (4) the agreement limits damages, (5) the agreement imposes a one-year statute of limitations, (6) the venue provision is confusing and one-sided, (7) the provision concerning small claims court limits consumers' rights, and (8) the lack of injunctive relief. (Resp. in Opp'n to Mot. to Compel Arbitration at 15–18, 19–25). None of Plaintiff's unconscionability arguments are directed specifically at the delegation provision. Because Plaintiff failed to "make any arguments specific to the delegation provision, and instead argued that the [Terms of Service agreement] *as a whole* is unconscionable under state law, [the Court] need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." *Brennan*, 796 F.3d at 1133 (internal citations and quotations omitted). Accordingly, the Court concludes the merits of Plaintiff's unconscionability arguments must be heard by an arbitrator.

///
///
///

# IV.

# CONCLUSION AND ORDER

For these reasons, Defendant's motion to compel arbitration and stay the case pending arbitration is granted. The Court stays the litigation to permit an arbitrator to decide the questions of arbitrability, and then, if permissible to arbitrate the substantive claims. Within 14 days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration, and request to dismiss the case or vacate the stay.

**IT IS SO ORDERED.**

Dated: January 24, 2020

Hon. Dana M. Sabraw
United States District Judge